Which is 5 days, 13 days, 0-4-0, Union Drainage District vs. Town of Pana. For those of you who weren't here earlier, I'm having some back issues, so I apologize for standing. I don't think I'm trying to intimidate you in any way. My name is Bob Fires, and I represent the Petitioner Appellate here. And the first thing I want to point out is that a key factor in this matter is that the evidence, that the finding by the Court here, the trial court, was that evidence offered by Petitioner's Appellate was specifically found to be wholly credible. The Court's finding was that evidence presented by Petitioner's, although wholly credible, was insufficient to establish connection or benefit. And therefore, denial of the annexation and assessment request. The real issue on appeal is one of law. Specifically, whether the proof of benefits that we offered at trial were sufficient in law as to any or all of the 11 disputed parcels. In other words, all the parcels benefited equally by this. In other words, they're all $9 benefits. The evidence was that they're all benefiting $9. All right. All right. But there was no basis, at least in the briefs, as to how the expert arrived at the $9. Was there? Your Honor, in the brief and in the transcript, Mr. Warner testified that the increase in productivity was well beyond, you know. I saw that, but he didn't. He didn't say it's two bushels at $5 a bushel. And I don't think the law requires that, Your Honor. I think there needs to be proof that there is benefit in excess of the cost. So he's using that as a minimum benefit. But he's saying the benefit is so far in excess of $9, it's not even, you know, it's not even in context. And, in fact, there was testimony that over the years there's been a 25 percent increase in crop production, largely because of drainage. Well, you don't have to know much about farming to know that if you've got an extra 40 bushels at $8 a bushel, it's well beyond $9. Well, you'll have to educate me on this. Why does the drainage increase the bushel capacity? Your Honor, and what the benefit here was tile drainage. I understand. And all these parcels virtually are drained by tile, except parcels saved to the farmstead. But there isn't any dispute. I don't believe there's any dispute. In fact, the experts of the Appalachians admitted that tile drainage benefits productivity, accessibility, and land value. But there was some discussion about how the tile drainage could actually harm the property, wasn't there? No. No. I don't believe there was any indication that tile drainage would harm. Okay. And I don't believe there was any dispute that tile drainage benefited. I think that what they're saying is that the lower repairing owner is harmed, and the upper repairing owner gets more drainage. That's what they're saying. Thank you. Well, the lower owner has a duty to take the surface water. I don't believe there's any duty to take the subsurface water. Well, the subsurface is not subsurface because of the tiling. Is that what you're saying? Well, and right. Right, Your Honor. And we're not claiming that they did damage. I thought you were when you said it filled the ____. Well, somehow they did. So your answer is we're filling everything. They moved on to our tile, which did some damage to some of our land. But in effect, that's irrelevant. The key issue is, did they benefit? And they did benefit. They benefited by their tile. Now, wait a minute. Stop. Who benefited? All the objectors. No, all of the objectors, which are the upper farm owners. Right. They all benefited by installing tile. Well, sure. All right. And that tile could not function without the drainage district. If they were lower, it would. Water runs downhill. The testimony is by Mr. Worthinger. Now, he did testify to that as to parcel A or parcel C. But if you read our brief, we cite where he says the tile would not function without the drainage district. Was there any testimony as to the elevation of the lower piece versus the upper piece? There was some testimony. How much was it? What was the difference? Well, there was a significant difference, but it varied. Okay. But that distance was no greater than the depth of the tile. So it would have run down, even underground. Again, I refer you to the finding by the trial court that the testimony and the evidence presented by the petitioners was wholly prevalent. But not persuasive. Our expert testified that that tile would not function without the drainage district facilities. That was not, and there was no evidence to the contrary. The judge, you're right, made that statement, but yet found that the evidence produced was not persuasive. It was not sufficient. In my opinion, the only reason he found that was he felt that we had to prove new benefit, which was the argument made by the appellees, that we had to prove new benefit and we had to prove specific calculation benefit, neither of which the law requires. What do you think the law requires with regard to benefit? I think as to farmland, we need to prove that there's an increase in productivity, an increase in accessibility, and or an increase in land value. And you don't think that's new benefit? That is new benefit. Oh. Well, that is benefit. If we show that that benefit was received by work done by the district, whether it was previously done or going to be done, it's benefit. And, you know, if you refer to 70 ILS CS 6058-3, it says when land lying outside of the district has been or will be benefited or protected, commissioners make a petition, has been or will be by work done by the district. Well, now, let's back up a little. Let's back up. If they've already made these improvements by putting, did you say they have or have not? Some have, some haven't. The drainage district over the years built. Well, let's not worry about that. I'm worried about the upper repairing, the ones that you're trying to include in the district. Now, if they have made the improvements, then how are they going to benefit? Because the law is taking it anyhow. The drainage district made it. Then the objectors put their tile in, taking advantage of the fact that they could put their tile in. You say they couldn't put their tile in. They couldn't put their tile in. It would not have functioned without the drainage district's assistance. There is evidence of that. Yes. Yes. As to every, there's a lot of parcels in this building. As to eight of them, I specifically asked that question and got a specific answer from the expert. And that's all cited in our brief. All right. As to three, parcel A, parcel C, and the parcel that's extra parcel, it's just given with a number, parcel 11, I did not ask that specific question. Those are the parcels that were already in the district? No. Parcel A was not in the district. Parcel C was in the district. And the parcel 11 was in the district. So two of the three were in the district. Parcel C is the land, is the homestead, which we believe is a different standard of what needs to be figured. We don't show productivity. What there was that the benefit was, our expert opinion was that septic system was directly tied to it. And so that was the benefit on that. As to the parcel 11, I don't believe they disputed the prime face of case. We didn't address that. Frankly, that was my error. I just didn't think about it because they never addressed it. So it was addressed in the exhibits but wasn't addressed in the, but like I said, I don't believe they rebutted the presumption, so I believe parcel 11 should be in based on the presumption. Our expert testified that tile drainage, subsurface water, crop production, land value were all benefited. And so we believe, and like I said, I'm not going to break each of the 11 parcels where the testing was. And the key thing here is, and I respectfully submit that since there isn't sufficient evidence as to exact elevations and stuff, we can't make a guess. But our experts specifically testified as to those 11 and none of that was rebutted. 605.5-1, as to the assessment, commissioners may levy and collect assessments for the performance of annual maintenance work, but that goes on. However, no land or property shall be assessed beyond what is just proportion or in excess of the benefits. And again, we addressed each of those 11 parcels. Testimony was that they all benefited well in excess of $9 and that it was equitable to charge them each that amount. If we reverse the trial court, do you believe we have any authority to do as the objectors have asked with regard to assessments? No, I don't. And neither with regard to sub-districts. Do you think the trial court would have the right to do that, though? I believe the trial court could consider sub-districts if a sufficient number of the landowners petitioned to have it done. I believe they can petition to have that done. I believe that the commissioners could do it. Commissioners haven't done it. And the testimony from our expert was that this is not the time to do it because until we bring it up to full maintenance, it wouldn't be fair. And that would raise all kinds of additional issues as to whether we should charge them for back work. I mean, they've been benefiting for years without pay. Why? Because the tile works now because the district is there. It wouldn't work without it. And they put the tile up years ago. So they haven't been paid. You know, we could go back and say we want paid for all that. We haven't. All we want paid for is maintaining this so that we can maintain the benefits that we have been providing them already. It's not like we're going to – we're not saying doing this annual maintenance is going to increase their yields going forward. It's going to keep them from going down because they've been getting this benefit for many, many years. And I can cite to the pages of where we talk about the tile wouldn't work if you want me to, but it's already in the brief. So essentially, that's all I have to say. You'll have your buck, Counsel. Thank you. Thank you. Counsel? May it please the Court? Mr. Byers. Your Honor, to kind of – I'm going to start with a little discussion of facts because this is a case of facts. And unfortunately, this is a case that has pitted neighbor against neighbor. Mr. Willard and the Willard family, who I represented for the objectors, have been good stewards of the land. If you look at the briefs and the reports that were in the – that were presented to the trial court, they have cleaned out ditches. They have maintained the vegetation out of the ditches. They rip-rapped to avoid erosion. And the discussion about tile, the tile that was put in, there was testimony, Your Honor, that the Willard's land is higher. The reports demonstrate that. And the tile that was put in, terraces were created on the Willard's farm that have tile to reduce a huge flow of water down the hip side. And that tile, the water would seep into the tile and would drain out into the ditches, not into the drainage district ditches. Yes, that water eventually flowed into the drainage district. I cannot deny that. But what the Willards did and what the objectors did was a lot of work that the drainage district would have done that they are not required to do because the Willards have been good stewards of their land. Now, there is the issue. There were some tracts of the Willards that were already in the drainage district and just off the top of my head, I can't remember which tracts were which. But the tracts that were already in the district, the Willards were objecting, saying that $9 an acre was not fair. The remaining districts were tracts that were not in the district that the district was asking to be annexed. We objected to both the annexation and to the assessment amount. So those were the issues. And after 2 days of testimony, Your Honor, and Mr. Wachier, the petitioner's expert, was excellent. He was clearly an expert. I represented the farmers who were trying to object to this that didn't have the resources that the district had. The issue before the court is whether the court's ruling was against the manifest weight of the evidence. If you take everything in the light most favorable to the objectors, would this court find that the trial court was incorrect in its ruling? And that's what the law says this court has to consider. If you look at the photos and reports, and this court has to look at the facts because that's what the issue is, the photos of the lands that need to be remedied by the drainage district, this has been going on for many years, Your Honor. This is a very large drainage district, and the drainage district has been neglected. There's no issue about that. And there's a lot of that work that needs to be done. But the question is whether $9 an acre charged to my clients, who have done the work on their land, who their expert testified they're not going to get any benefit from $9 an acre. Is that fair? Now, Mr. Wapier argued that fairness wasn't the issue. It was benefit. And it was, as Mr. Byer said, he says that we've been getting benefit all along. I would disagree with that because you're ignoring the fact that the objectors did a lot of work on their own land and work that the drainage district would have done. And Mr. Wapier, the expert for the petitioners, did agree, although he said he hadn't really looked at the work that the Willards had done. He did agree that there was very little work that needed to be done on their land. This is simply an issue. As in the Lackey case, our water is running into the drainage district. That's the natural flow of the water. And therefore, the petitioners believe that we should pay $9 an acre because our water runs into the drainage district eventually. Now, there was arguments that we get the benefit because the drainage district has created all of these ditches and that's the reason that our water runs through. But there was no testimony as to who really created those ditches. And I suspect, and Mr. Wapier couldn't confirm that, that pieces of land, drainage districts grow over a period of time. It wasn't that this drainage district was always this drainage district and the water from our land always flowed into the drainage district. It was probably created over a period of time. And who created those ditches and whether the drainage district was responsible for those ditches and when those ditches were created was never established. This is a very old drainage district. It's been here for a long time. They are now trying to take land into the drainage district that for many, many years have drained. They drained to the north. And they want to add our lands because we've drained to the north. And, Your Honor, my clients objected to that when they have done a lot of work to make sure that their land's good. And contrary to statements that were made by Mr. Meyers, I would disagree that there was no evidence that the tile would not work if the drainage district didn't exist. Well, Your Honor, because they keep going up the hill until they get all of it. They get the whole state of Illinois. Well, that's basically what's happening. There's a struggle in the lands. I happen to be a farm girl. Mr. Meyers is a farm boy. So we're at a little more advantage than you are as to our understanding of I mean, good. But I happen to be a drainage commissioner. Mr. Meyers owns land in the district that I'm a commissioner of. This is very near and dear to our hearts. Drainage is very important to farmers, as you well know, being a farmer. And whether we get benefit at $9 an acre, when our real estate taxes were only $6 or $7 an acre, is surprising to me. And I think, logically, it's a stretch. Let me get this straight. You are a district commissioner. Not in this district, Your Honor. Okay. I'm representing the district. No, I wouldn't be arguing this. I'm a district commissioner in Shelby County. Make sure. And so I'm well aware of the importance of the assessments and how those are calculated. And it truly is, when you're talking about neighbors, an issue of fairness and whether the will hours as the objectors should be charged at $9 an acre. I want to ask you about your request for relief. This is the alternative, Your Honor. Especially with you being a commissioner. Do you really think we have the right? No, I think you have the right to send it back to the trial court with some instructions. Do I think that this court has the right? No, I do not. Do we even have the right to give them instructions? I don't have an answer to that. I would argue that, yes, if the trial court has a duty to follow the law and you interpret the law, then, yes, I would say that you most likely have some right to direct the court. That was in the alternative only. I understand. I was just wondering about our authority. But I still question whether if, in the alternative, if this court would say that the trial court would overturn a baseline manifest weight of the evidence, then the question becomes what obligations the trial court has. And I go back to my arguments. This is a huge assessment that the district was asking for. And as evidenced by the testimony of the bar manager, this is very unusual. It's generally done as a special or additional assessment rather than an annual assessment. And as I said, as I argued in my brief, in annual assessment, there's no supervision by the court. And Mr. Byers argued in his brief that, well, you can go to the drainage district meetings. You can go listen to the drainage district meetings, but you have no say in the decisions. The drainage commissioners vote. They set the assessments, and then it's approved by the court. Your only alternative is to object. And if this $9 an acre is set at $9 per acre into perpetuity, nobody's watching what these drainage commissioners are doing. And we really have no right to question it. And that's my argument in the alternative. Thank you. Thank you. Thank you, counsel. You're welcome. Justices, counsel. Your Honor, even their own experts acknowledge our expert. In fact, their expert indicated he found nothing to fault with Mr. Worthinger's testimony. On questioning, his response was, in effect, he said, I just can't calculate that benefit myself. Well, if you look at his credentials and his testimony, their experts did one drainage district thing ever. They had their variable. To call them experts is stretching my point. And they did not dispute directly anything that our expert testified to as to benefit. Their testimonial effect amounted to, I just can't see where there's – their court rule is going to be bigger. Or that new tile will help. We don't have to show that. They didn't understand the law. Yes, the only thing they're saying is higher. Underground, in general, is higher. But there, you know – but there was certainly no contradiction that the tile – their tile that they installed would not function without the drainage district. And they admitted tile benefits productivity, accessibility, and layback. I was shocked at the trial court's ruling. And I submit to you that this is a case that needs to be reversed. These – the objectors, they have – we have – nobody said they were bad farmers or that they weren't doing some things that were good for the land. Just like almost everybody else in the district is doing. And so if they spent a little money there, then it would be reimbursed. If they were in the district, they could be asking for reimbursement – asking for that work to be done or be reimbursed for it. If it's something the district should be doing. They've been benefiting for years without paying. That is not fair. But is – I've heard you say that. But that's not the law, is it? The law is if they benefit. The law is if they benefit from the work of the district. In the past? Yes. They should pay? In the past, they should pay. So you can wait for five, six years and then just come in and annex them because of past work done? Well, we may have – you know, as a matter of fact, that would not be taken very well, I suspect, by courts. But is that what's happening here? No, Your Honor. They're paying to maintain – they're paying to maintain ongoing benefits. They're going to continue to receive benefits. We're not charging them for past benefits. They're paying to maintain the benefits we've been providing. We're not charging them for the past benefits. We're charging them because they benefit from us maintaining the district so that they can continue to benefit. And that is the law, in my opinion. Thank you, Your Honor. In case you would take an unadvised order in due course.